IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

PAUL JUNIOR SUTTON                                                    PLAINTIFF

              v.                    Civil No. 4:09-cv-04051

MAJOR GARY TURNER,
Miller County Detention Center;
SGT. RACHEL JONES,
Miller County Detention Center; and
SGT. ALICE MILLER,
Miller County Detention Center                                      DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights case filed by the Plaintiff, Paul Junior Sutton (hereinafter Sutton), pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis.* Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2009), the Honorable Jimm Larry Hendren, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

Sutton is currently an inmate of the Arkansas Department of Correction (ADC). However, the incidents at issue in this lawsuit occurred while Sutton was incarcerated in the Miller County Correctional Facility (MCCF). Specifically, Sutton contends his Due Process rights were violated in connection with his confinement to lock-down and by the use of a "restraint" chair on two occasions.

Defendants have filed a motion for summary judgment (Doc. 22). The motion addresses Sutton's claims regarding his placement in the restraint chair on two occasions but does not address his claim that he was locked down without Due Process. Sutton filed a response to the motion (Doc. 27). The motion is now ready for decision.

-1-

## I. BACKGROUND

Sutton was incarcerated at the MCCF from November 7, 2008, until he was transferred to the ADC on August 17, 2009. *Defendants' Exhibit* A (hereinafter *Defts' Ex.*). In the complaint, Sutton alleges he was placed on lock-down by Warden Turner (Turner) on April 23, 2009. *Complaint* (Doc. 1) at page 4. As of April 26th, Sutton alleges he had not been told why he was locked-down. *Id.* While he was locked down, Sutton alleges he was placed in the restraint chair two times without being checked on a regular basis. *Id.* The first time he was placed in the chair, Sutton states he was in a cell with another inmate and restrained in such a way that he could not have protected himself. *Id.* He alleges the next shift was not even informed that he was in the chair. *Id.* The second time he was put in the restraint chair, Sutton indicates he was put in receiving and discharge area where he was observed. *Complaint* (Doc. 1) at page 5. On both occasions, Sutton maintains he was put in the restraint chair for punishment purposes. *Id.* at pages 4-5.

According to Defendants, Sutton was a known discipline problem. They point to the following incidents all but the first of which occurred during a different period of incarceration: (1) on December 26, 2008, Sutton was identified as one of the inmates who attacked another inmate, *Defts' Ex.* B at pages 1-4; (2) in April of 2005, Sutton was in an altercation with another inmate and locked down for three days as a result; *Id.* at pages 13-14; (3) in May of 2005, Sutton destroyed county property, *Id.* at pages 9-12; and (4) in July of 2005, Sutton was identified as a suspect in an inmate fight. *Id.* at pages 5-8

Defendants also support their motion with an undated letter addressed to the United States District Court from Sergeant Alice Miller (Miller) allegedly addressing Sutton's complaints of unfair treatment. *Defts' Ex.* B at page 15. Miller indicates that on some unspecified date Sutton was found to be in possession of items reported missing from the property room. *Id.* When the items were

found, Miller states Sutton became combative and had to be restrained for the protection of the officers. *Id.* Miller indicates Sutton was placed in receiving and discharge in the plain view of the officer. *Id.*

Defendants also offer in support of their motion a letter from Turner addressed to Attorney C. Burt Newell. *Defts' Ex.* C. In this letter, Turner indicates Sutton was found in possession of stolen property on February 24, 2009. *Id.* This appears to be the same incident referred to by Miller. Turner also indicates that on some unspecified date in April of 2009, he received a phone call indicating that the camera in receiving and discharging had been compromised by a female deputy who used the camera to take photographs of Sutton and another inmate. *Id.* When Sutton was questioned, Turner states he became disruptive and combative and was placed in holding cell seven. *Id.* When he continued to be disruptive Sutton was placed in the restraint chair and moved to receiving and discharge. *Id.*

A report written by Rachel Jones indicates that on April 23, 2009, she walked past holding cell seven and saw Sutton standing up with his feet still locked in the straps of the restraint chair. *Defts' Ex.* D. Jones requested help to place Sutton back in the chair. *Id.* At the time, the right strap was missing. *Id.* After he was placed in the chair again, the cell was searched for the strap but it was not found. *Id.* Sutton was secured to the chair and the officers left the cell. *Id.*

Miller County's policy regarding the use of restraints specifies that "restraint shall not be used as a form of punishment." *Defts' Ex.* E, II(C). Restraints are "used only as a precaution against escape, to prevent self-injury, injury to others, or property damage." *Id.* at IV(B). An inmate placed in restraints "shall be closely monitored at no less than fifteen (15) minute intervals." *Id.* at IV(E). The policy further provides that "[a]n incident report will be written and forwarded to the jail administrator." *Id.* at IV(F).

-3-

## II.  ARGUMENTS OF THE PARTIES

First, with respect to any official capacity claims, Defendants argue the complaint is completely devoid of any alleged custom or policy of Miller County which resulted in a violation of Sutton's constitutional rights.  Second, with respect to any individual capacity claims, in view of Sutton's combative behavior on April 23rd, they maintain the use of restraints was within the guidelines of Miller County's approved policy.  Based on the letter from Turner, Defendants argue Plaintiff was placed in the restraint chair for valid penological purposes to protect himself and others from harm.  Further, they maintain Jones' report shows Sutton was checked on while in the chair in the holding cell and that Turner's letter establishes that when the chair was moved to receiving and discharge it was in plain view of an officer.  Finally, Defendants argue they are entitled to qualified immunity because no clearly established statutory or constitutional rights were violated.

In opposition, Sutton first argues the incidents in 2005 have no bearing on this case.  Second, he argues that he was put in the restraint chair on two separate occasions for the purpose of punishing him.  While in the chair, Sutton asserts he was not checked on every fifteen minutes as required by the policy and was not allowed to use the restroom.  He points out there is no report indicating why he was placed in the chair.

## III. DISCUSSION

"[L]iberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982).  "The interest survives a criminal conviction and incarceration, pretrial detention, or involuntary civil commitment.  Of course, a detainee's liberty interest in freedom from restraint is highly qualified and must be balanced against the state's reasons for restraining that liberty." *Benjamin v. Fraser*, 264 F.3d 175, 188 (2nd Cir. 2001)(citations omitted).

In this case, there is no evidence before the Court as to Sutton's date of conviction.  We will therefore assume he was a pretrial detainee.  The law is clear that a pretrial detainee cannot be punished.  *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  "However, not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).  *See also May v. Sheahan*, 226 F.3d 876, 884 (7th Cir. 2000)("The Due Process Clause of the Fourteenth Amendment prohibits the use of bodily restraints in a manner that served to punish a pre-trial detainee.").

"Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention." *Bell*, 441 U.S. at 537.  In determining whether a particular restriction constitutes a permissible restriction or amounts to impermissible punishment, the court first asks "whether the restriction is based upon an express intent to inflict punishment." *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002)(citations omitted).  If "there is no indication of such an express intent," the court next considers "whether punitive intent can be inferred from the nature of the restriction." *Valdez*, 302 F.3d at 1045.

In this regard, the Supreme Court in *Bell* held that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell*, 441 U.S. at 539.  "An action may be reasonably related to a legitimate governmental purpose if an alternative purpose to which the act may rationally be connected is assignable for it and the action does not appear excessive in relation to the alternative purpose assigned." *Robles v. Prince George's County, Maryland*, 302 F.3d 262, 269 (4th Cir. 2002)(internal citations and punctuation omitted).  "Conversely, if a restriction or condition is not

reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees." *Terry v. Hill*, 232 F. Supp. 2d 934, 943 (E.D. Ark. 2002). However, "[c]ourts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility." *Id.* (citations omitted). Furthermore, there is a *de minimis* level of imposition with which the Constitution is not concerned." *Smith*, 87 F.3d at 268.

In this case, there are clearly genuine issues of material fact based on the record before us. Defendants have introduced no incident reports dealing with the initial placement of Sutton in the chair, no logs, or other documentation suggesting the reason Sutton was placed in the chair, how long he was in the chair, whether he was checked on a regular basis, allowed out of the chair for restroom breaks or to stretch his muscles, etc. Defendants have presented no summary judgment evidence of compliance with the Miller County policy in regard to conducting the fifteen minute checks or the preparation of an incident report.

Instead, Defendants produce two unsworn "letters" that are clearly not part of the regular records kept by Defendants. The first letter, from Miller, is undated and refers to an incident occurring on an unspecified date between June 2, 2009, and August 18, 2009, when Sutton was found in possession of items alleged to be missing from the property room and placed in the restraint chair. *Defts' Ex.* B at page 15. The second letter, from Turner, clearly refers to a separate incident occurring on some unspecified date when Turner was advised that a camera had been compromised by a female deputy and Sutton was one of two inmates whose picture was taken. *Defts' Ex.* C. Sutton was again put in the restraint chair. *Id.* The final piece of evidence relevant to the April 23rd

use of the restraint chair is a report that merely corroborates the fact that Sutton was in the chair in holding cell seven and had to be secured again. *Defts' Ex.* D. Jones gives no indication of the reason Sutton was in the chair, how long he was in the chair, the frequency with which he was checked or any other relevant information. *Id.* Jones, in fact, does not indicate she went to the cell to check Sutton but instead was walking by when she observed Sutton standing up with his feet still secured to the chair.

Finally, Defendants maintain they are entitled to qualified immunity. The qualified immunity "inquiry comes down to two questions: (1) whether the facts alleged or shown, construed in the light most favorable to [the plaintiff], establish a violation of a constitutional ... right, and (2) whether that constitutional right was clearly established as of [the time of the relevant conduct], such that a reasonable official would have known that his actions were unlawful." *Langford v. Norris*, 614 F.3d 445, 459 (8th Cir. 2010) (internal quotations and citation omitted). In this case, I believe Sutton has alleged the deprivation of a recognized constitutional right, that this right was clearly established, and that outstanding questions of fact preclude summary judgment at this time on the ground of qualified immunity. *Davis v. Hall*, 375 F.3d 703, 712 ( 8th Cir. 2004).

## IV.  CONCLUSION

For the reasons stated, I recommend that the Defendants' motion for summary judgment (Doc. 22) be denied.

**The parties have fourteen (14)  days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are**

**reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 16th day of February 2011.

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE